■ 150 WEST 26TH STREET CORP., Respondent, v LORI J. GALOWITZ, Defendant, and ROSEMARY RICCHIO, Appellant. 150 WEST 26TH STREET CORP., Respondent, v BRUCE THOMPSETT, Appellant.—Orders and judgments, Supreme Court, New York County (Martin Evans, J.), entered October 8, 1985, ejecting defendants Ricchio and Thompsett from their respective apartments, and order of the same court and Justice, entered the same date, denying said defendants' motion to vacate its earlier decision to grant ejectment, unanimously reversed, on the law and the facts, with costs and disbursements, and the matter remanded to Trial Term for a hearing to determine the amount that defendant Thompsett should pay plaintiff for the use and occupancy of the entire 1,800 square feet of space of his residential loft.

Defendants are loft tenants under separate commercial leases for second-floor lofts in plaintiff's building at 150 West 26th Street. The premises were let to defendants in 1979 for residential purposes with the representation that the building was being converted to residential use. After defendants took occupancy and converted their respective premises to residential use with the installation of residential fixtures, plaintiff sought a variance to convert the building to residential use. In the summer of 1980, approximately one year after the tenants had taken occupancy, the Board of Standards and Appeals granted the variance for the upper floors, but denied it as to the second floor. In 1982, after defendants' leases had expired, Multiple Dwelling Law article 7-C, generally known as the "Loft Law", was enacted. In accordance with the "grandfathering" provisions of New York City Zoning Resolution § 15-021 (c), defendants, together with the other residential tenants in the building, made a timely application for a determination of residential loft occupancy with the New York City Planning Commission. Meanwhile, plaintiff commenced these two ejectment actions in 1983, claiming that defendants were holdovers whose occupancy was illegal. Plaintiff also sought the reasonable value of defendants' use and occupancy of the premises since the expiration of their leases. Defendants claimed the protection of the Loft Law, arguing that, pursuant to Multiple Dwelling Law § 281, their lofts and the building qualify as an interim multiple dwelling (IMD). Though their applications for certification of their apartments for residential use were apparently being given favorable consideration by the time of

the trial herein, defendants had not yet received a final certificate from the Chairman of the Planning Commission.

Multiple Dwelling Law § 281 (1) defines an IMD as any building or portion thereof which, in a city of more than one million persons, "(i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy pursuant to section three hundred one of this chapter; and (iii) on December first, nineteen hundred eighty-one was occupied for residential purposes since April first, nineteen hundred eighty as the residence or home of any three or more families living independently of one another." At trial, defendants showed that the building met these statutory criteria even though the administrative certificate of the Chairman of the City Planning Commission had not yet been issued. They demonstrated that the building had been used solely for commercial purposes before plaintiff began subletting to residential tenants in 1979 and that as of June 21, 1982, the effective date of the Loft Law, the building lacked a residential certificate of occupancy (C.O.). Although a temporary residential C.O. had been used for a single apartment on the fifth floor, it had expired by its own terms before the statute's effective date. In fact, plaintiff never claimed that the building had a proper C.O. which exempted it under Multiple Dwelling Law § 281 (1) (ii). Rather, plaintiff claimed that an intradepartmental memorandum from the acting Commissioner of the Department of Buildings to another official was the equivalent of a C.O. This memorandum, however, authorized the issuance of only a temporary C.O., and only on condition plaintiff complied with certain requirements, including the installation of smoke detectors in all the units. The smoke detectors were never installed and the conditions were never met. Furthermore, even had the memorandum been a temporary C.O., instead of a conditional authorization for the issuance of one, the premises would still not be exempt from Loft Law coverage and IMD status since the Loft Board's regulations (NY City Loft Bd Coverage Reg [1] [B] [2]), to which we should defer (see, Fasnacht v Schwinberg, NYLJ, Apr. 29, 1985, p 7, col 4 [App Term, 1st Dept]), expressly provide that a temporary C.O. does not exempt a building or part thereof from IMD registration. Thus, if a temporary C.O. does not exempt a building from IMD status, certainly an agency memorandum authorizing a temporary C.O. will not do so, especially if the memorandum conditions issuance of the C.O. on work which was never performed. Finally, plaintiff stipulated that during the entire

"window period" from April 1, 1980 through December 1, 1981, the building was occupied by at least three families, two of whom were defendants, living independently of one another. Clearly, all the criteria of Multiple Dwelling Law § 281 (1) were met and, although subdivision (2) of the section further narrows subdivision (1)'s definition of an IMD, defendants' evidence at trial proved that the building also falls within that narrower class of building as well.

Trial Term, however, in concluding that classification of that portion of the building occupied by defendants as an IMD was precluded by the Loft Law, relied on the last sentence of subdivision (2), which provides that "[i]f such rezoning does not permit residential use of the building or a portion thereof, or if a special permit, minor modification or administrative certification is denied, such building shall be exempt from this article." Specifically, Trial Term found that the Board of Standards and Appeals 1980 denial of a zoning variance for the second floor constituted a bar to IMD classification. In our view, Trial Term's finding was erroneous and violated the spirit and intent of the Loft Law. Initially, we note that the Board of Standards and Appeals is not a local planning agency within the meaning of Multiple Dwelling Law § 281 (2). The City Planning Commission and its staff, the City Planning Department, are. (See, Administrative Code of City of New York ch 8.) Thus, the 1980 denial of a residential variance as to the second floor, two years before the effective date of the Loft Law, cannot constitute the type of administrative rejection by "a local planning agency" (Multiple Dwelling Law § 281 [2]) as contemplated by the Loft Law. Moreover, New York City Zoning Resolution § 15-021 (c) specifically encompasses the neighborhood in which the building in question is located, and provides that dwelling units therein which the Chairman of the City Planning Commission determines were occupied on September 1, 1980 shall be a permitted use, provided that a complete application for a determination of occupancy is filed no later than June 21, 1983. For purposes of the Loft Law, such a determination of residential occupancy on September 1, 1980 shall be "deemed to permit residential use as of right for such dwelling units." (NY City Zoning Resolution § 15-021 [c].) Although the Zoning Resolution does not use the phrase "administrative certification" as does Multiple Dwelling Law § 281 (2), the uncontroverted testimony of a disinterested witness, the Department of City Planning's Assistant Loft Coordinator, established that the City Planning Commission's "determination of residential occupancy" consti-

tutes the administrative certification to which the statute refers. Indeed, the Zoning Resolution expressly provides that "a determination of residential occupancy on September 1, 1980, shall be deemed to permit residential use as of right for such dwelling units." (NY City Zoning Resolution § 15-021 [c].) Although the Chairman of the City Planning Commission had not issued his determination at the time of trial, any open issues before him were clearly resolved in defendants' favor at trial. Moreover, three days after Trial Term's decision, but before the court made any findings of fact or conclusions of law, the Chairman of the City Planning Commission issued a "Determination of Residential Loft Occupancy", affording defendants the Loft Law's protection. That should have been sufficient to remove the underpinnings of Trial Term's erroneous finding of exemption based on the 1980 denial of a variance. Instead, Trial Term denied defendants' motion to vacate its decision based on that determination, ruling that the process by which it was reached was flawed since it was conducted ex parte. We find nothing in the record to support Trial Term's conclusion that plaintiff was not given notice or an opportunity to be heard. Moreover, and as already noted, in order to obtain the "grandfathering" effect of the Loft Law at the Planning Commission, defendants need not have proved more than they had already proved indisputably at trial. There is no requirement that an adversarial proceeding be held before the Planning Commission. Thus, the orders and judgment must be reversed.

The matter is remanded to determine the amount that defendant Thompsett should pay for use and occupancy with respect to the entire demised premises as to which he is a cotenant, not just the half in which he resides. Concur—Sullivan, J. P., Asch, Fein, Kassal and Ellerin, JJ.